IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LATYRA MORGAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| TAMMY GRIME, | ) |
| COLLINS, | ) |
| SHANNON, | ) |
| SHERRY, | ) |
| BONNIE, | ) |
| DR. SHAH, | ) |
| OFFICER TAMMY, | ) Case No. 23-cv-729-DWD |
| C/O LIEBIG, | ) |
| C/O JONES, | ) |
| GREEN, | ) |
| IKE, | ) |
| BUCKLES, | ) |
| SERGEANT CHAMBERS, | ) |
| C/O FULTON, | ) |
| D. GORETZKE, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

This matter is before the Court on pro se Plaintiff Latyra Morgan's Complaint (Doc. 1), her Motion for Recruitment of Counsel (Doc. 3), and her Motion for Status (Doc. 14). Plaintiff alleges the defendants violated her constitutional rights in a variety of fashions while she was a pregnant detainee at the St. Clair County Jail. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money

damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## Complaint

On December 16, 2021, Plaintiff was transported from the Sangamon County Jail to the St. Clair County Jail (the "Jail"). A correctional officer involved in the transport informed Defendants Sherry, Liebig, and Grime, that Plaintiff should not be placed with a fellow transferee because Plaintiff was pregnant, and the fellow transferee posed a safety risk. Liebig ignored this warning and placed Plaintiff in a hold cell with the fellow detainee. The transport officer also informed Jail Superintendent, Defendant Grime, of the risk. Grime had a brief conversation with the fellow transferee, and then returned the transferee back to the cell. Later that nigh the transferee attacked Plaintiff. Plaintiff was taken to the medical unit where she explained to Defendant Shannon, a nurse, that she was in pain and had vaginal bleeding. Shannon refused to examine Plaintiff and indicated she would need a pregnancy test to confirm pregnancy. Plaintiff asked to be hospitalized, but Shannon refused.

In association with this series of events, Plaintiff alleges that Defendant Liebig violated her rights by failing to protect her from the attack, and Defendants Chambers (Liebig's supervisor) and Grime violated her rights by failing to supervise and correct Liebig's conduct despite knowing of a risk to her safety. Plaintiff also alleges that Defendant Sherry, an intake nurse, failed to perform proper female intake procedures by failing to pregnancy or Covid-19 test her, and by failing to document her high-risk pregnancy.

Next, Plaintiff alleges that on December 24, 2021, Defendant Nurse Tammy failed to provide prenatal care and refused to disclose her Covid-19 test results because of the nature of her underlying charges. Plaintiff apparently grieved problems about Nurse Tammy, because she subsequently alleges that on January 29, 2022, Defendant Ike placed she and other pregnant detainees on lockdown as retaliation for the grievances about Nurse Tammy. On the lockdown, the inmates were not allowed phones or tablets, and all privileges were taken away. Ike also allegedly refused prenatal care.

On January 14, 2022, Defendant Buckles attended a prenatal exam with Plaintiff at a hospital. Buckles allegedly participated in the appointment and provided false information to the attending nurse. Plaintiff alleges that Buckles' actions violated her right to medical privacy. Plaintiff makes similar allegations about Defendants Jones and Fulton, who accompanied her to appointments in February and March of 2022. Plaintiff further alleges that Defendant Green is responsible because he supervises Buckles, Jones, and Fulton, and refused to correct their actions.

Plaintiff alleges that from December of 2021 to May of 2022, Dr. Shah violated her rights by refusing to ensure adequate prenatal care, by failing to supervise Nurses Bonnie, Sherry and Tammy, and by ignoring prescriptions and correspondence from St. Mary's Hospital. (Doc. 1 at 8).

In April and May of 2022, Plaintiff wrote complaints and grievances to Defendants Grime and Collins about her right to have visitors while hospitalized, and her plan to have an emergency contact if she went into labor at the jail. She further alleges Grime and Collins refused her access to pregnancy-related educational programming. She

alleges these actions violated her First Amendment right to freedom of association, and her Eighth Amendment rights.

Plaintiff alleges that on May 23, 2022, she had filed grievances and complaints about Defendant Liebig apparently allowing another unqualified jail individual to review her medical files. Despite issues with Liebig, when she awoke from an emergency C-section on May 24, 2022, it was Liebig who entered her hospital room to monitor her. Liebig placed metal cuffs, waist shackles, and leg irons on the couch, gave Plaintiff a smirk, and sat down to work on her laptop. Plaintiff alleges that on May 29, 2022, Liebig instructed other officers to use metal cuffs on her just five days post-partum when she could barely walk. She alleges these actions violated her right to medical privacy and caused pain and suffering.

Finally, Plaintiff alleges that during her time as a pretrial detainee at the Jail, Defendant D. Goretzke failed to properly supervise defendants Dr. Shah, Nurse Bonnie, Nurse Tammy, Nurse Shannon, and Nurse Sherry. Additionally, Goretzke falsely told others she received adequate care, and failed to ensure her vital signs were adequately documented, or appropriate care was provided.

As relief Plaintiff seeks a declaration that her rights were violated, and monetary compensation. (Doc. 1 at 10). In support of the Complaint, Plaintiff submitted various documentation.

Based on the allegations in the Complaint, the Court designates the following claims:

**Claim 1:** Fourteenth Amendment failure to protect claim against Defendants Liebig, Chambers or Grime;

**Claim 2:** Fourteenth Amendment denial of adequate medical care by Defendant Sherry for intake;

**Claim 3:** Fourteenth Amendment refusal of emergency care by Defendant Shannon after the attack by the fellow detainee;

**Claim 4:** Fourteenth Amendment deliberate indifference to needed prenatal care by Defendants Nurse Tammy, Ike, or Dr. Shah;

**Claim 5:** First Amendment retaliation claim against Defendant Ike for placing pregnant detainees on lockdown after complaints about prenatal care;

**Claim 6:** Defendants Buckles, Jones, Fulton, Green, and Liebig violated Plaintiff's right to medical privacy by either inappropriately participating in her appointments or disclosing her medical files to others;

**Claim 7:** First or Fourteenth Amendment claim against Defendants Grime and Collins for refusing Plaintiff's pre-birth plans, by denying her visitors at the hospital, and by refusing pre-birth education;

**Claim 8:** Fourteenth Amendment cruel and unusual punishment claim against Defendant Liebig for directing other staff to use metal handcuffs on Plaintiff five days postpartum; and

**Claim 9:** Fourteenth Amendment deliberate indifference claim against Dr. Shah and Defendant Goretzke for failing to supervise medical staff or to ensure appropriate care.

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## Preliminary Dismissal

Plaintiff named Nurse Bonnie as a defendant in the caption, and the list of defendants, but Plaintiff does not provide any factual allegations specific to Bonnie. At most, Plaintiff alleged that Dr. Shah failed to supervise Nurse Bonnie. Section 1983 liability is premised on personal involvement in a constitutional violation, so without allegations about what actions Bonnie took, Plaintiff has failed to state a valid claim against Bonnie. Defendant Nurse Bonnie is dismissed without prejudice for failure to state a claim.

## Analysis

### Claim 1

Plaintiff alleges that Liebig failed to protect her from the risk posed by the fellow transferee, despite being informed by the transport officer that there was a risk the transferee would attack her. Further, Defendants Grime and Chambers were also notified of the risk, but failed to act, and their failure amounted to a failure to supervise Liebig. To state a viable failure-to-protect claim under the Fourteenth Amendment:

> a pretrial detainee must allege: (1) the defendant made an intentional decision regarding the conditions of plaintiff's confinement; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate the risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved, making the consequences of the defendant's inaction obvious; and (4) the defendant, by not taking such measure, caused the plaintiff's injuries.

*Thomas v. Dart*, 39 F.4th 835, 841 (7th Cir. 2022).

Plaintiff's allegations are sufficient at this early juncture to proceed against Defendants Liebig, Grime, and Chambers, on the allegation that each individual personally knew of a risk posed by the fellow detainee to Plaintiff but failed to intervene before Plaintiff was attacked. Ultimately, this claim will turn on what each Defendant really knew about a risk posed by the fellow detainee, and if their actions in response to that knowledge were unreasonable.

By contrast, to the extent that Plaintiff attempts to bring failure to supervise claims against Grime or Chambers, the allegations in the complaint are insufficient to support this legal theory. There is no *respondeat superior* or supervisory liability under Section 1983, individuals are liable only for their own misconduct. *Stockton v. Milwaukee Cty.*, 44 F.4th 605, 619 (7th Cir. 2022) (a claim against supervisors for allowing other defendants to maintain an unconstitutional widespread custom or practice failed without evidence of a practice that violated plaintiff's rights, and because he did not demonstrate the personal involvement of the supervisors in a constitutional harm); *Kemp v. Fulton Cty.*, 27 F.4th 491, 497-98 (7th Cir. 2022) (there is no respondeat superior liability under § 1983). Failure to supervise or train claims are most commonly presented against a government entity, such as a county or a sheriff's office, if there is a widespread or obvious failure of the organization as a whole that leads to the injury of an inmate. Plaintiff's allegations suggest nothing beyond her own experience, so she has not presented sufficient information to make out a plausible failure to supervise claim against Grime or Chambers on a policy or practice level. Moreover, because she is proceeding against Grime and

Chambers for their personal knowledge and refusal to protect her, it would be redundant to include a failure to supervise claim.

**Claim 2**

Plaintiff alleges that Defendant Nurse Sherry performed an inadequate intake process because she failed to follow proper female intake procedures, which could have included a pregnancy test, a Covid-19 test, and documentation of her high-risk pregnancy. The violation of an internal policy or procedure does not rise to the level of a constitutional violation, *United States v. Pecore*, 664 F.3d 1125, 1132 (7th Cir. 2011) (the violation of a government agency's internal policies and procedures do not amount to a § 1983 claim). Therefore, Plaintiff may not proceed against Nurse Sherry related to intake at the jail.

**Claim 3**

Plaintiff alleges that after she was attacked she was taken to the medical unit where Defendant Nurse Shannon refused to examine her or to provide care despite her reports of pain and bleeding. A pretrial detainee's Fourteenth Amendment right to medical care is violated if: (1) there was an objectively serious medical need; (2) the defendant made a volitional act with regard to the plaintiff's medical need; (3) that act was objectively unreasonable under the circumstances in terms of treating or assessing the patient's serious medical need; and (4) the defendant "acted purposefully, knowingly, or perhaps even recklessly" with respect to the risk of harm. *Miranda v. Cty. Of Lake*, 900 F.3d 335, 353–54 (7th Cir. 2019); *Terry v. Cty. Of Milwaukee*, 357 F.Supp.3d 732, 743-44 (E.D. Wisc. Jan. 11, 2019) (applying the Fourteenth Amendment standard to claims by a pregnant

pretrial detainee against jail officials). At this early juncture, this claim is sufficient to proceed against Nurse Shannon.

**Claim 4**

Plaintiff alleges that Defendant Nurse Tammy violated her rights by refusing to disclose the results of her Covid-19 test based on her charges, and by failing to provide adequate prenatal care. The Covid-19 test results are not clearly related to a serious medical situation, so Plaintiff may not proceed on this factual allegation. Plaintiff also alleges that Nurse Tammy refused adequate prenatal care. While prenatal care certainly is important, Plaintiff does not identify anything specific that Nurse Tammy refused. Her allegation that she was denied "adequate prenatal care" is too generic to make out a plausible claim against Tammy. The same is true of the identical allegation against Ike, who also allegedly denied medical care, because there are no details about what care was needed or denied.

Plaintiff is a bit more specific as to Dr. Shah, whom she alleges denied her prescribed medications and/or ignored correspondence from St. Mary's Hospital about the same issue. While detained individuals are not entitled to demand specific medical care, Plaintiff will be allowed to proceed at this early juncture against Dr. Shah concerning the administration of prescribed medications.

However, Plaintiff will not be allowed to proceed against Dr. Shah for his alleged failure to supervise nurses Bonnie, Sherry, or Tammy, because there is no *respondeat superior* liability under § 1983. Plaintiff's allegations do not make it obvious how Dr. Shah would have known that he needed to oversee the care of these three nurses, what the

nurses did incorrectly, what authority Dr. Shah had to alter the care the provided, or any other details that would make it obvious what Dr. Shah's specific role and interaction was with these individuals. Plaintiff may proceed against Dr. Shah for the medication issue, but not for the issue of supervision.

**Claim 5**

Plaintiff alleges that in late January of 2022, Defendant Ike retaliated by placing Plaintiff and other pregnant detainees on lockdown. To state a retaliation claim, a plaintiff must identify: (1) protected speech; (2) a deprivation likely to deter protected speech; and, (3) that the protected speech was at least 'motivating factor' in the deprivation. *Reed v. Bowen*, 769 Fed. App'x 365, 370-71 (7th Cir. 2019). While Plaintiff's grievances and complaints about prenatal care might be protected speech, she has not pled a plausible link between the speech and the lockdown. She alleges she began her protected speech around the time of a December 24, 2022, appointment with Nurse Tammy, but it was not until January 29, 2023, after she had argued with Ike, that Ike implemented a lockdown. The temporal and causal relationship between the December appointment and the late-January lockdown are insufficient to plausibly allege retaliation by Ike. Additionally, to the extent Plaintiff engaged in an argument with Ike, and the argument itself led to the lockdown, it is much less likely that an argument is protected speech, than grievances or complaints about care from Nurse Tammy. Accordingly, Claim 5 is dismissed without prejudice for failure to allege a plausible claim.

**Claim 6**

Plaintiff alleges Defendants Buckles, Jones, Fulton, and Liebig violated her right to medical privacy on various occasions by participating in her medical appointments or revealing her medical records to others. Although some conduct of this nature may be inappropriate or unacceptable, there is not a constitutional protection associated with "medical privacy" so Plaintiff will not be allowed to proceed on this claim against the named defendants. Plaintiff also names Green in association with this claim, because Green supervised the other defendants, but there is no supervisory liability, so the claim against Green fails.

**Claim 7**

Plaintiff alleges that Defendants Grime and Collins violated her First Amendment rights by ignoring or declining her requests to have visitors at the hospital or to appoint an emergency contact if she went into labor at the jail. "Inmates do not have an absolute right to visitation, [but] prison officials may not restrict an inmate's visitation with family members without balancing the inmate's interests against legitimate penological objectives." *Easterling v. Thurmer*, 880 F.3d 319, 323 n. 6 (7th Cir. 2018). At this early juncture, the Court will allow Plaintiff to proceed under the First Amendment against Defendants Grime and Collins, though this claim will depend heavily on the development of the factual record.

As to the allegation that Grime or Collins failed to train employees to handle pregnant detainees, this claim is inadequately formed to proceed on the theory of a violative policy or custom as discussed in relation to Claim 1, and it is inadequate to proceed premised on Grime or Collins personal actions, because those actions are not

described. Additionally, as to the allegation about educational programming, while educational programming related to pregnancy is obviously desirable, it is not mandated by the constitution. *See Donnell C. v. Illinois State Bd. Of Educ.*, 829 F.Supp. 1016, 1018 (N.D. Ill. Aug. 20, 1993) (there is no explicit protection of a right to education under the federal constitution, nor is education a fundamental right, though school-aged children in pretrial detention may have a claim regarding education under the substantive due process clause of the Fourteenth Amendment).

### Claim 8

Plaintiff alleges that Defendant Liebig violated her rights by directing other officers to use metal handcuffs just five days after she gave birth. The use of bodily restraints may amount to a constitutional violation if restraints are used in a manner that serves to punish a pretrial detainee. *See e.g. Terry v. Cty. Of Milwaukee*, 357 F.Supp.3d at 755, 756 (E.D. Wisc. Jan. 11, 2019) (allowing a detainee to proceed on a claim about the use of restraints in-transit-to and at the hospital during and after childbirth). Plaintiff will be allowed to proceed at this preliminary juncture against Liebig because her allegations suggest that Liebig directed the use of handcuffs despite it being unnecessary based on her physical state.

### Claim 9

Plaintiff alleges that Dr. Shah and Goretzke violated her rights by failing to supervise medical staff or to ensure proper medical care. She does not describe specific instances, nor does she describe Goretzke's role on more than a supervisory level. As

already discussed earlier in this order, mere supervisory authority is not sufficient to state a § 1983 claim, so Claim 9 will be dismissed without prejudice.

## Severance

The Court notes that Rules 18, 20, and 21 of the Federal Rules of Civil Procedure govern the inclusion of multiple claims against different parties in a single lawsuit. While not all of Plaintiff's claims are directly related, the Court has opted at this early juncture not to sever the case into multiple lawsuits because there is some commonality in the defendants from claim to claim, and the entirety of the lawsuit concerns Plaintiff's experience as a pregnant pretrial detainee at the Jail. Severance in this particular case might frustrate judicial efficiency, so at least for now, the claims will proceed in unison.

## Motion for Recruitment of Counsel

Plaintiff has moved for recruited counsel (Doc. 3) on the premise that she is not knowledgeable about civil litigation, and she has attempted to retain counsel to no avail. There is no right to the appointment of counsel in civil matters. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010). When presented with a request to appoint counsel, the Court must consider: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself [.]" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007). Plaintiff has not supplied any proof that she attempted to retain counsel on her own behalf, and the case is still in the earliest stages, which require only a basic exchange of information. Plaintiff's Motion (Doc. 3) is denied without prejudice. If she reapplies for counsel, she must include proof of her efforts to seek her own counsel,

and she must specifically explain what difficulty she is having maintaining this litigation on her own behalf.

## Disposition

**IT IS HEREBY ORDERED THAT Claim 1** of the Complaint (Doc. 1) survives initial screening as described above against Defendants Liebig, Grime, and Chambers; **Claim 3** survives against Defendant Nurse Shannon; **Claim 4** survives against Defendant Dr. Shah, **Claim 7** proceeds against Defendants Grime and Collins, and **Claim 8** proceeds against Liebig. By contrast, Claims 2, 5, 6, and 9 are dismissed in full for failure to state a claim, and Claim 4 is dismissed as it relates to Nurse Tammy and Ike. The Clerk of Court is **DIRECTED** to **TERMINATE** Defendants Bonnie, Sherry, Tammy, Ike, Buckles, Jones, Fulton, Green, and Goretzke because Plaintiff has failed to state a valid claim against these parties.

Plaintiff's Motion for Status (Doc. 14) is **GRANTED** by the issuance of this Order. Plaintiff's Motion for Counsel (Doc. 3) is **DENIED** without prejudice.

The Clerk of Court is **DIRECTED** to prepare for Defendants Liebig, Grime, Chambers, Nurse Shannon, Dr. Shah, and Collins: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay

the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.**

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that she is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate her whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. Fed. R. Civ. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA protective order because this case will involve Plaintiff's medical records.

**IT IS SO ORDERED.**

Dated: June 9, 2023

/s *David W. Dugan*
_____
DAVID W. DUGAN
United States District Judge

Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear. As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, she will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.